IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| **MARK L. JEFFREY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 5:10-01180** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Standing Order entered October 4, 2010 (Document No. 3.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 7 and 8.) and Plaintiff's Reply. (Document No. 9.)

The Plaintiff, Mark L. Jeffrey (hereinafter referred to as "Claimant"), filed an application for DIB on August 30, 2007 (protective filing date), alleging disability as of September 1, 2002,[1] due to diabetes, high cholesterol, depression, and vision problems. (Tr. at 10, 62, 67, 105-07, 121-22.)  The claims were denied initially and upon reconsideration. (Tr. at 62-64, 67-69.) On September 20, 2007, Claimant requested a hearing before an Administrative Law Judge (ALJ).

---

[1] At the administrative hearing, Claimant, by counsel, amended the alleged onset date to May 25, 2007, the day after the date of the dismissal of his request for hearing on his prior application for benefits. (Tr. at 10.)

(Tr. at 58-59.) A hearing was held on September 22, 2009, before the Honorable Stephen A. DeMonbreum. (Tr. at 20-53.) By decision dated November 4, 2009, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 10-19.) The ALJ's decision became the final decision of the Commissioner on August 17, 2010, when the Appeals Council denied Claimant's request for review. (Tr. at 1-5.) Claimant filed the present action seeking judicial review of the administrative decision on November 4, 2010, pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2009). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth

and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2009). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the

> degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>      (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). [2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, May 25, 2007. (Tr. at 12, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from the following severe medically determinable impairments: "obesity, diabetes with neuropathy, and depression." (Tr. at 12, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 13, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform light level work as follows:

> [T]hrough the date last insured, the [C]laimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for that which involves operation of foot controls, crawling, climbing ladders/ropes/scaffolds, exposure to hazards, or concentrated exposure to temperature extremes. Additionally, [C]laimant was further limited to simple, easy to learn, unskilled work that does not involve interaction with the public.

(Tr. at 14, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past

relevant work. (Tr. at 17, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a food preparation worker, an assembler, and a packer, at the light level of exertion. (Tr. at 18-19, Finding No. 10.) On this basis, benefits were denied. (Tr. at 19, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born on June 10, 1956, and was 53 years old at the time of the administrative hearing, September 22, 2009. (Tr. at 17, 105.) Claimant had a high school education and was able to communicate in English. (Tr. at 17.) In the past, he worked as a material handler and fork lift operator. (Tr. at 17, 126-32.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in at least two ways in assessing Claimant's mental residual functional capacity for light work. (Document No. 7 at 11-18.) First, Claimant asserts that the ALJ erred in concluding at the hearing that *res judicata* applied to the prior dismissal of Claimant's request for hearing on May 24, 2007. (Id. at 11-14.) This error caused Claimant and his counsel to amend the alleged onset date to May 24, 2007, the date on which Claimant's prior request for hearing was dismissed. (Id.) This error also caused the ALJ not to consider the April 4, 2007, opinion of Dr. Bruce Davis that Claimant could stand or walk for one hour without interruption and no more than four hours per day. (Id. at 11, 13-14.) Second, Claimant asserts that the ALJ erred in finding incredible Claimant's testimony regarding his lower extremities due to diabetic peripheral neuropathy. (Id. at 11, 14-18.) Claimant testified that he experienced pain in his feet after 10 to 15 minutes of standing and that he could walk for 20 to 25 minutes. (Id. at 14.) Claimant asserts that the ALJ did not believe his testimony because he did not comply with treatment for his diabetes. (Id. at 15.) Claimant therefore, contends that the ALJ failed to develop the record establishing by substantial evidence that his diabetes was reasonably remediable by him, given his social and psychological situation. (Id.) The ALJ simply found that his diabetes and peripheral neuropathy were not as severe as alleged because Claimant did not exercise or follow a diabetic diet. (Id.) Claimant asserts that the ALJ's conclusion was not supported by any evidence of record that Claimant's alleged noncompliance was unjustified. (Id.) Particularly, Claimant asserts that no

7

physician prescribed exercise to remedy his peripheral neuropathy. (Id.)

In response, the Commissioner first asserts that the ALJ never made a finding that *res judicata* applied to the period prior to Claimant's amended alleged onset date. (Document No. 8 at 6.) Rather, the ALJ suggested that there may have been such an issue and that Claimant may have wanted to consider changing his alleged onset date. (Id. at 6-7.) Second, the Commissioner asserts that Claimant voluntarily agreed to amend his alleged onset date on the advice of counsel. (Document No. 8 at 7-8.) Next, the Commissioner asserts that the ALJ was entitled to consider Claimant's "willful noncompliance with the treatment recommended by his doctors to control his diabetes, especially because he carefully examined [Claimant's] reasons for not complying." (Id. at 9.) The Commissioner notes that the ALJ extensively questioned Claimant at the hearing about his lack of medical treatment and refusal to follow prescribed treatment for his diabetes. (Id. at 10.) Claimant testified that he did not follow a diabetic diet or exercise, even though his doctor told him to lose weight. (Id.) Regarding his ability to pay for medical care, the Commissioner notes that Claimant testified that he neither discussed with his wife the need for money for medical visits, nor did she tell him that she would pay for medical visits only every other month. (Id. at 11.) Finally, the Commissioner asserts that the ALJ considered Claimant's psychological condition and found no mention of depression prior to October 30, 2007. (Id.) Accordingly, the Commissioner asserts that the ALJ's decision is supported by substantial evidence. (Id. at 12.)

In Reply, Claimant asserts that while the ALJ considered Claimant's psychological impairments generally, he failed to develop the record regarding whether his mental impairments interfered with his ability to treat his diabetes. (Document No. 9 at 2.) Claimant notes that on November 27, 2007, Dr. Hayes stated that his depression interfered with his ability to control his blood sugar to some degree. (Id.) Furthermore, the record demonstrated Claimant's fear of

needles, which affected his ability to check his blood sugar. (Id.) The ALJ failed to mention these factors in his decision. (Id.) Claimant further asserts that the ALJ's "suggestion that *res judicata* applied to the dismissal is legally erroneous and prejudiced [Claimant]." (Id.) Claimant contends that the ALJ was able to persuade him and his counsel that *res judicata* applied and therefore, that an amendment of the onset date was necessary. (Id.) Nevertheless, citing Tankersley v. Barnhart, 487 F.Supp.2d 149, 156 (E.D. N.Y. 2007), Claimant asserts that the ALJ was required to ensure that his alleged onset date had a legitimate basis. (Id. at 3.)

Analysis.

*Res Judicata* & Alleged Onset Date.

Claimant asserts that the ALJ erred in at least suggesting that *res judicata* applied to the May 24, 2007, dismissal of his request for hearing, which caused him and counsel to amend the alleged onset date to May 24, 2007. The transcript of the administrative hearing demonstrates that Claimant amended his alleged onset date to May 24, 2007, on the suggestion of the ALJ. The ALJ indicated that there may have been possible *res judicata* issues based on the dismissal of his request for hearing on May 24, 2007. Consequently, the ALJ suggested that Claimant amend his onset date to May 24, 2007. The transcript states in part, as follows:

> ALJ: Okay. Mr. Smith, just as a procedural note, I note that Mr. Jeffrey's alleged onset date of September 1st, 2002, it looks like there was a prior application that resulted in an ALJ dismissal on 5-24-07. I'm thinking there may be some res judicata issues there. His DLI is 12-31-07, his current application protected filing date is 8-30-07. Just things you may want to keep in mind.
>
> * * *
>
> ALJ: …I know what you swore to when you filed for Social Security disability, but it doesn't appear that that information is entirely accurate. Mr. Smith, a suggestion here to maybe help your claimant out of a bind that he apparently has kind of got himself in. You have a prior ALJ decision of a dismissal on 5-24-07. May I suggest that you pick the day after that dismissal as your new alleged onset date. It's still

> within your date last insured, and you don't have to worry about the res judicata problem.
>
> ATTY: It's agreeable, your Honor.
>
> ALJ: Well, do you want to discuss it with Mr. Jeffrey first? What I just explained to you, so he's on board with that?
>
> \*\*\*
>
> ALJ: Mr. Smith, you've had an opportunity to discuss with Mr. Jeffrey the proposed, amending the onset date to 5-25-07, which would be the day after the prior ALJ's dismissal and probably would help you in your alleged onset date, apparently that's going to be problematic. I take it you've discussed this with Mr. Jeffrey and he's agreeable to amend his onset date, is that correct?
>
> ATTY: Yes, Your Honor.
>
> ALJ: Okay. So, Mr. Jeffrey, we're going to amend your onset date to 5-25-07. And what we're going to do now is focus the hearing on your medical condition on and since that date forward, okay? So, well, we know you had the diabetes and everything prior to that date, but as a far as disability is concerned, we're looking at limitations that have affected you since May 25th, 2007.

(Tr. at 24, 32-34.)

The Commissioner correctly points out that Claimant was represented by counsel at the administrative hearing and that the decision was theirs to make. Nevertheless, the record is clear that the ALJ proposed an amended onset date of May 24, 2007. The Commissioner asserts that if Claimant had wanted an earlier onset date, then he should have advised counsel of such, or that counsel should have suggested a different date to the ALJ. Though the Commissioner is correct in his statement, it is reasonable for Claimant and his counsel to have acted on the advice of the ALJ and amended his onset date. Whether or not the ALJ was correct in his statement regarding *res judicata* is irrelevant as Claimant and his counsel acted on the ALJ's advice and proposal. As Claimant points out, "the ALJ is required to ensure that the date selected had a legitimate basis." (Document No. 9 at 3.) See Tankersley v. Barnhart, 487 F.Supp.2d 149, 156 (E.D. N.Y.

2007)(finding that even if a claimant consents to entry of a stipulated date of onset, the ALJ was required to ensure that there was a legitimate medical basis for the date selected.).

As a result of the amended alleged onset date, the ALJ failed to consider the consultative examination report and Medical Source Statement of Ability to Do Work-Related Activities (Physical) from Dr. Bruce Davis, M.D., dated April 4, 2007. (Tr. at 215-27.) Dr. Davis opined, *inter alia*, that Claimant could stand or walk for only an hour at a time and no more than four hours per day based on his examination of Claimant. (Tr. at 219.) Consequently, the ALJ neither assigned weight to Dr. Davis's opinion, nor included his limitations in a hypothetical to the VE. Accordingly, the undersigned finds that the ALJ erred in suggesting and proposing an amended alleged onset date of May 24, 2007, to Claimant and his counsel, and consequently, in failing to consider the evidence from Dr. Davis. The undersigned finds that this matter should be remanded for further consideration of all the evidence of record and for clarification of an alleged onset date.

Because the undersigned finds that remand is necessary on the issues surrounding Claimant's alleged onset date, the undersigned does not address the remaining issue regarding how Claimant's psychological condition may have affected his diabetes and peripheral neuropathy.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 7.), **DENY** the Defendant's Motion for Judgment on the Pleadings (Document No. 8.), **VACATE** the final decision of the Commissioner, **REMAND** this matter for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g), and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District

Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Berger, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: February 1, 2012.

R. Clarke VanDervort
United States Magistrate Judge